IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY; ERIE INSURANCE GROUP; and WEST BEND MUTUAL INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>    v.<br><br>GREE USA, INC.;<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, STATE FARM FIRE AND CASUALTY COMPANY, ERIE INSURANCE GROUP, and WEST BEND MUTUAL INSURANCE COMPANY, by their attorneys, GROTEFELD HOFFMANN, LLP, complain of Defendant, GREE USA, INC., and for their Complaint, state the following:

## PARTIES

1. Plaintiff State Farm Fire and Casualty Company (hereinafter "State Farm") is an insurance company licensed in the State of Illinois and engaged in the business of insuring properties throughout the United States, including in Illinois, with its principal place of business in Bloomington, Illinois, organized under the laws of Illinois.

2. Plaintiff Erie Insurance Group (hereinafter "Erie") is an insurance company licensed in Illinois and engaged in the business of insuring properties throughout the United States, including in Illinois, with its principal place of business in Erie, Pennsylvania, organized under the laws of Pennsylvania.

3. Plaintiff West Bend Mutual Insurance Company (hereinafter "West Bend") is an insurance company licensed in Illinois and engaged in the business of insuring properties throughout the United States, including in Illinois, with its principal place of business in West Bend, Wisconsin, organized under the laws of Wisconsin.

4. Defendant Gree USA, Inc. (hereinafter "Defendant" or "Gree USA") is a California corporation engaged in the business of designing, manufacturing, distributing, and selling consumer appliances, including dehumidifiers, throughout the United States, including in Illinois, with its principal place of business in City of Industry, California.

## SUBJECT MATTER JURISDICTION

5. The Subject Matter Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as all Plaintiffs are citizens of different states, are diverse parties from Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as Defendant does substantial business in this judicial district, including the selling of dehumidifiers at issue, and because a substantial part of the events giving rise to the claims and/or a substantial part of the property that is the subject of this action is situated within this judicial district.

## PERSONAL JURISDICTION

7. Gree USA is a California corporation, which distributes and sells consumer appliances throughout the United States, including in Illinois, and this Court has general personal jurisdiction over Gree USA based on its contacts within the State of Illinois.

8. This case arises out of the design, manufacture, distribution, and sale of in excess of two million, five-hundred thousand (2,500,000) dehumidifiers by Defendant, eighteen of which

are alleged to have ignited fires forming the basis of this Complaint, which were imported into the United States, including in Illinois, by Gree USA.

## BACKGROUND

9. In October of 2010, Gree China formed a joint venture with another U.S. company, MJC America, to form and found Gree USA for the purpose of distributing and selling dehumidifiers designed and manufactured by foreign entities, throughout the United States, including in Illinois.

10. Between 2008 and November of 2016, Defendant designed, manufactured, distributed, and sold dehumidifiers within the United States, including in Illinois, under various brand names.

11. As a part of its distribution and sale of said dehumidifiers, Defendant represented to its distributors, licensees, retailers, and to the general public that its dehumidifiers were certified by Underwriter's Laboratories Inc. ("UL"), and that the design and materials used in the manufacturing of its dehumidifiers complied with UL Standards 474 and 94.

12. As part of the UL certification process, Defendant made representations to UL that the plastics used in the construction of its dehumidifiers complied with the fire ratings in UL 94.

13. UL 94 requires that consumer electric products, including dehumidifiers, use plastics that have specific burn and flame rates in order to prevent, reduce and limit the risk of fire hazards.

14. In its application for UL certification under UL 474, Defendant represented that the materials and plastics used to manufacture and construct its dehumidifiers were compliant with UL 94.

15. Defendant made these false and misleading representations knowing that the materials and plastics used in the subject dehumidifiers were not compliant with UL 94's burn and flame rate requirements.

16. Defendant made these false and misleading representations knowing that UL was unable to independently conduct the burn and flame resistance testing set forth in UL 94, and that UL relied on Defendant's representations that it had performed said tests and that the plastics complied.

17. US retailers will not purchase and sell dehumidifiers that are not certified by UL.

18. US consumers will not and cannot purchase dehumidifiers that are not certified by UL because US retailers will not purchase or sell non-UL Listed electric products.

19. On or before July 26, 2012, the CEO of Gree USA witnessed a video of a Gree manufactured/distributed dehumidifier igniting a fire and burning.

20. On or before July 26, 2012, the CEO of Gree USA forwarded the subject video to representatives of Gree Hong Kong and Gree China, labeling the video "urgent" and noting that the video was "scary to watch" and a "very serious issue with GREE product quality."

21. Following notice of the very serious issue with GREE product quality, Defendant designed, manufactured, distributed and sold dehumidifiers it knew were defective and non-compliant with UL requirements, failing to notify the Consumer Product Safety Commission (CPSC) or retailers/consumers of the defective conditions.

22. Following numerous reports of fires, Defendant, in cooperation with the CPSC, issued a recall of 2,200,000 dehumidifiers designed, manufactured, distributed, and sold within the United States between January of 2005 and August of 2013, including dehumidifiers sold under 12 different brands. (See September 12, 2013 CPSC Recall, attached hereto at Exhibit A).

23. In May of 2014, the recall was re-announced due to a significant increase in the number of overheating events and fires caused by the dehumidifiers. (See May 15, 2014, CPSC Recall, attached hereto as Exhibit B).

24. In November of 2016, the recall was expanded and re-announced due to a significant increase in the number of overheating events and fires caused by the dehumidifiers, including 450 reports of fires originating at Gree-manufactured dehumidifiers causing in excess of $19,000,000.00 in property damage. (See November 29, 2016, CPSC Recall, attached hereto as Exhibit C).

25. As of the time of its most recent recall, only approximately 10 percent of the recalled dehumidifiers had been returned, and removed from residences in the United States.

26. At all material times hereto, the United States had in full force and effect 15 U.S.C. § 2064, which provided that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the CPSC.

27. At no time prior to September 12, 2013, did the Defendant notify the CPSC of the known defective conditions with dehumidifiers designed, manufactured, or distributed by the Defendant within the United States, despite actual knowledge that said dehumidifiers did not meet UL safety standards, that the dehumidifiers contained defective conditions, and that the dehumidifiers created an unreasonable risk of death or injury to consumers.

28. In response to the information provided to the CPSC, the CPSC instituted a civil penalty investigation against Gree USA, and Gree USA entered into a Deferred Prosecution Agreement with the U.S. Department of Justice, Consumer Protection Division and the Attorney General for the Central District of California, including penalties in excess of $52,000,000.00.

29. The civil penalty investigated alleged that the Defendant (a) knowingly failed to report a defect and unreasonable risk of serious injury to the CPSC, (b) knowingly made misrepresentations to the CPSC during its investigation, and (c) knowingly sold dehumidifiers bearing the UL safety certification mark with knowledge that the dehumidifiers did not meet UL flammability standards.

30. On or about March 14, 2016, Gree USA entered into a Settlement Agreement with the CPCS. (See March 14, 2016 CPSC Gree Settlement Agreement, attached hereto as Exhibit D).

31. Pursuant to the CPSC Settlement Agreement and the Deferred Prosecution Agreement, the Defendant admitted that it knew that the dehumidifiers were not compliant with the UL flammability standards, but that they were designed, manufactured, distributed and sold, or otherwise imported into the stream of commerce, bearing the UL registered safety certification mark.

32. On or about October 28, 2021, the Defendant agreed to pay a total monetary penalty in the amount of $52,200,000.00 to the United States, inclusive of CPSC civil penalties, criminal fines, and other monetary penalties imposed by the Deferred Prosecution Agreement. (See Deferred Prosecution Agreement, attached hereto as Exhibit E).

**SUBROGATED CLAIMS**

33. Plaintiff State Farm issued policies of property insurance throughout the United States, including in Illinois, for among other things, damages to real and other personal property, and related damages, arising from, among other things, fire.

34. Prior to the initiation of this litigation, Plaintiff State Farm's insureds purchased dehumidifiers designed, manufactured, distributed, and sold by Gree USA, and placed those

dehumidifiers into their residences for the normal and foreseeable use of reducing humidity, and in a reasonable and intended manner.

35. Prior to initiation of this litigation, the subject dehumidifiers, which were unreasonably defective at the time of purchase, ignited fires and caused damage to real and other personal property, in addition to other related damages, in the homes of State Farm's insureds.

36. A list of State Farm's insureds, along with claim numbers, loss locations, amount of loss, and dates of loss is attached herein and is incorporated by referenced into this Paragraph. (See State Farm List of Claims, Attached hereto as Exhibit F).

37. As a direct and proximate result of said fires, Plaintiff State Farm has paid to its insureds an amount in excess of $2,368,000.00.

38. By virtue of its payments and policy of insurance, and in equity, State Farm is now a bona fide subrogee of its insureds up to the amount paid for any claims against responsible third parties, including the Defendant.

39. Plaintiff Erie Insurance issued policies of property insurance throughout the United States, including in Illinois, for among other things, damages to real and other personal property, and related damages, arising from, among other things, fire.

40. Prior to the initiation of this litigation, Plaintiff Erie Insurance's insureds purchased dehumidifiers designed, manufactured, distributed, and sold Gree USA, and placed those dehumidifiers into their residences for the normal and foreseeable use of reducing humidity, and in a reasonable and intended manner.

41. Prior to initiation of this litigation, the subject dehumidifiers, which were unreasonably defective at the time of purchase, ignited fires and caused damage to real and other personal property, in addition to other related damages, in the homes of Erie Insurance's insureds.

42. A list of Erie Insurance's insureds, along with claim numbers, loss locations, amount of loss, and dates of loss is attached herein and is incorporated by referenced into this Paragraph. (See Erie Insurance List of Claims, Attached hereto as Exhibit F).

43. As a direct and proximate result of said fires, Plaintiff Erie Insurance has paid to its insureds an amount in excess of $906,000.00

44. By virtue of its payments and policy of insurance, and in equity, Erie Insurance is now a bona fide subrogee of its insureds up to the amount paid for any claims against responsible third parties, including the Defendant.

45. Plaintiff West Bend issued policies of property insurance throughout the United States, including in Illinois, for among other things, damages to real and other personal property, and related damages, arising from, among other things, fire.

46. Prior to the initiation of this litigation, Plaintiff West Bend's insureds purchased dehumidifiers designed, manufactured, distributed, and sold by Gree USA, and placed those dehumidifiers into their residences for the normal and foreseeable use of reducing humidity, and in a reasonable and intended manner.

47. Prior to initiation of this litigation, the subject dehumidifiers, which were unreasonably defective at the time of purchase, ignited fires and caused damage to real and other personal property, in addition to other related damages, in the homes of West Bend's insureds.

48. A list of West Bend's insureds, along with claim numbers, loss locations, amount of loss, and dates of loss is attached herein and is incorporated by referenced into this Paragraph. (See West Bend Insurance List of Claims, Attached hereto as Exhibit F).

49. As a direct and proximate result of said fires, Plaintiff West Bend has paid to its insureds an amount in excess of $420,000.00.

50. By virtue of its payments and policy of insurance, and in equity, West Bend is now a bona fide subrogee of its insureds up to the amount paid for any claims against responsible third parties, including the Defendant.

## COMMON DEFECTIVE CONDITION

51. All of the dehumidifiers designed, manufactured, distributed and/or sold by Gree USA possess the same common defects, including (a) the use of electrical terminal sleeves that use PVC materials, (b) the use of plastics and materials for structural components of dehumidifiers that do not meet and comply with UL 94 V0, and (c) the use of plastics and materials for terminal covers that do not meet and comply with UL 94 5VA.

52. Following each of the fire losses listed in Exhibit F, Plaintiffs investigated the origin and cause of the fire and determined that the fires were caused by the same defective conditions which form the basis of above outlined recalls.

53. Common questions of fact and law exist as to all claims listed in Exhibit F, and all Plaintiffs are similarly situated property insurers whose insureds made claims for property damage arising out of fires that originated at defective dehumidifiers which were designed, manufactured, distributed, and/or sold by the Defendant, including the fire risk associated with the dehumidifiers, the knowledge of the Defendant at the time the dehumidifiers were placed into the stream of commerce, whether the Defendant concealed the defective conditions of the dehumidifiers, any misrepresentations by the Defendant, whether the dehumidifiers are defective, and whether the corrective actions taken by the Defendant were sufficient.

## COUNT I: NEGLIGENCE

54. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully pled herein this Count.

55. At all times pertinent hereto, Defendant owed a duty to Plaintiffs and their insureds to design, manufacture, produce, test, inspect, market, distribute, warn and sell dehumidifiers with reasonable care, and to protect Plaintiffs and their insureds from the unreasonable risk of harm.

56. At all times pertinent hereto, Defendant knew or should have known that the dehumidifiers created a dangerous and unreasonable risk of harm of overheating and igniting fires during the normal and intended and foreseeable use because the products did not meet the certification standards which they purported to meet.

57. Notwithstanding said duties and knowledge, Defendant breached its standard of care through one or more of the following careless, negligent, or reckless acts or omissions to act:

   a. Carelessly, negligently, and recklessly designed, manufactured, distributed and sold dehumidifiers which contained materials, including the plastic components, insufficient for the intended use;

   b. Carelessly, negligently, and recklessly designed, manufactured, distributed and sold dehumidifiers containing non-UL certified materials;

   c. Carelessly, negligently, and recklessly misrepresented the materials used to manufacture the dehumidifiers;

   d. Carelessly, negligently, and recklessly took insufficient action to remove the defective and unreasonably dangerous dehumidifiers from the stream of commerce;

   e. Carelessly, negligently, and recklessly failed to properly inspect and test the internal electrical components of the dehumidifiers to ensure that they were not unreasonably dangerous prior to distribution and sale;

   f. Carelessly, negligently, and recklessly assembled the dehumidifiers in such a way as to cause an arcing event on the internal components during the foreseeable and intended use;

   g. Carelessly, negligently, and recklessly failed to warn consumers of the known defective and unreasonable condition of the dehumidifiers;

   h. Was otherwise careless, negligent, and reckless in the design, manufacture, assembly, testing, inspection, distribution and sale of the dehumidifiers.

58. As a direct and proximate result of the aforementioned careless and negligent acts and/or omissions to act by the Defendant Gree USA, the dehumidifiers in the homes of Plaintiffs' insureds listed in Exhibit F suddenly and dangerously failed, causing fires to ignite within the subject dehumidifiers.

59. As a direct and proximate result of the aforementioned careless, negligent, reckless, and willful and wanton acts and/or omissions to act by the Defendant, and the resulting fires, certain real and other personal property, in addition to other related damages, belonging to Plaintiffs' insureds was damaged and/or destroyed.

60. At all times pertinent hereto, the above outlined careless, negligent, and/or reckless conduct was authorized, ratified, and/or approved by principals of the Defendant.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered in their favor against Defendant Gree USA in an amount in excess of $3,694,922.69, together with costs, punitive damages, interest, and any other relief this Court deems equitable and just.

## COUNT II: STRICT PRODUCT LIABILITY

61. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully pled herein this Count.

62. At all pertinent times, the Defendant was engaged in the business of designing, manufacturing, distributing, and selling consumer appliances, including dehumidifiers, throughout the United States.

63. The Defendant designed, manufactured distributed and sold the dehumidifiers identified in Exhibit F.

64. The dehumidifiers designed, manufactured, distributed, and sold by the Defendant, which are identified in Exhibit F, were intended to and did reach the Plaintiffs' insureds without substantial change to the condition in which they were introduced into the stream of commerce.

65. At all times pertinent hereto, the dehumidifiers identified in Exhibit F were used in a reasonable and foreseeable manner, and for their intended purpose.

66. At the time the dehumidifiers identified in Exhibit F left the possession and control of Defendant, they were defective and unreasonably in one or more of the following ways:

   a. They were designed, manufactured, distributed, and sold with insufficient materials, including plastic materials, for the normal, intended and foreseeable use;

   b. They were designed, manufactured, distributed and sold containing fraudulent UL-certifications;

   c. They were designed, manufactured, distributed and sold in such a manner to allow for an electric arc to occur at the overload protector/thermal protection device or its associated conductors;

   d. They were designed, manufactured, distributed and sold without adequate safety devices to prevent fire from escaping the dehumidifier;

   e. They were designed, manufactured, distributed and sold it inadequate or insufficient warnings regarding the risk of fire;

   f. They were designed, manufactured, distributed, and sold with a known defective condition that increased the unreasonable risk of fire;

   g. They were designed, manufactured, distributed, and sold in a manner that allowed for the compressor to overheat and ignite a fire;

   h. They were designed, manufactured, distributed, and sold with a thermal protection cap and sleeve which were combustible and susceptible to leaching;

   i. They were otherwise designed, manufactured, distributed, and sold in a manner that rendered them unreasonably dangerous during the normal, foreseeable, and intended use.

67. As a direct and proximate result of the aforementioned unreasonably dangerous and defective condition of the dehumidifiers designed, manufactured, distributed, and sold by the

Defendant Gree USA, the dehumidifiers in the homes of Plaintiffs' insureds listed in Exhibit F suddenly and dangerously failed, causing fires to ignite within the subject dehumidifiers.

68. As a direct and proximate result of the aforementioned defective and unreasonably dangerous condition of the dehumidifiers, and the resulting fires, certain real and other personal property, in addition to other related damages, belonging to Plaintiffs' insureds was damaged and/or destroyed.

**WHEREFORE**, Plaintiffs respectfully request that judgment be entered in their favor against Defendant Gree USA in an amount in excess of $3,694,922.69, together with costs, interest, and any other relief this Court deems equitable and just.

Dated: October 6, 2022

        Respectfully submitted,

        STATE FARM FIRE AND CASUALTY
        COMPANY, ERIE INSURANCE GROUP
        and WEST BEND MUTUAL INSURANCE COMPANY

        By: */s/ William J. Hoffmann*
            One of its attorneys

William J. Hoffmann (ARDC: 6211756)
Brad M. Gordon (ARDC: 6243004)
Michael J. Scola (ARDC: 6302960)
GROTEFELD HOFFMANN, LLP
311 S. Wacker Drive, Suite 1500
Chicago, IL 60606
Ph: (630) 262-1112
bhoffmann@ghlaw-llp.com
bgordon@ghlaw-llp.com
mscola@ghlaw-llp.com